UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BACK9 NETWORK, INC.            :
    Plaintiff,                 :     CIVIL ACTION NO.
                               :     3:12-CV-00582(JCH)
v.                             :
                               :
BRIAN ALTOUNIAN and ALLIANCE   :
ACQUISITIONS, INC.             :     MARCH 13, 2013
    Defendants.                :

**RULING RE: DEFENDANTS' MOTION TO DISMISS [Doc. No. 9]**

**I.   INTRODUCTION**

Plaintiff Back9 Network, Inc. ("Back9") filed this action against the defendants, Brian Altounian ("Altounian") and Alliance Acquisitions, Inc. ("Alliance"), seeking a declaration that certain certificates of Back9 stock that were transferred to the defendants were properly canceled by Back9's Board of Directors and are void, invalid, and of no effect. See Compl. ¶ 1. Altounian and Alliance have moved to dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Mot. to Dismiss (Doc. No. 9).

**II.  FACTUAL BACKGROUND**

The plaintiff, Back9, is a Delaware corporation with its principal place of business in Hartford, Connecticut. Compl. ¶ 11. Back9 was founded in 2010, and has been based in Hartford, Connecticut since its founding. Bosworth Aff. ¶ 3. Defendant Alliance is a Nevada corporation with its principal place of business in Los Angeles, California. Compl. ¶ 12. Defendant Altounian is the Chief Executive Officer ("CEO") of Alliance and a citizen of the state of California. Compl. ¶ 13.

1

Back9 is a multi-media golf and entertainment lifestyle network. Compl. ¶ 11. Back9 entered into negotiations with Tom Meloth ("Meloth") in the spring of 2010 to become its Executive Creative Director. Bosworth Aff. ¶ 7. As part of these negotiations, Back9 discussed with Meloth that, were he to become creative director, he would receive in excess of one million founders' shares in Back9. Id. at ¶ 8; Compl. ¶ 4.

In or around the spring of 2010, Meloth purported to convey 388,195 shares of Back9's common stock—a portion of the founders' shares—to Altounian. Compl. ¶ 4. Altounian had promised Meloth that he or Alliance would invest up to $10 million in Back9 in exchange for the stock Altounian was receiving from Back9. Compl. ¶ 5. Back9's Board of Directors was concerned about Meloth's transfer of stock, but Meloth assured them that Altounian would promptly provide the promised financing. Bosworth Aff. ¶ 10. Back9's founder and CEO James Bosworth ("Bosworth") spoke with Altounian, who informed Bosworth that Back9 should honor Meloth's promise to transfer the shares because he would provide Back9 with $250,000 in seed money by June 2010, with a minimum equity investment of $10 million to follow. Bosworth Aff. ¶ 11. Back9 agreed to honor the transfer of shares based on these promises, id. at ¶¶ 11-12, and sent Altounian the stock certificates. Gorman Aff. ¶ 4. Altounian conveyed all or a majority of those shares to Alliance. Bosworth Aff. ¶ 12.

Over the next 16 months, Altounian promised Bosworth—during telephone calls which Bosworth received in Connecticut as well as emails directed to Bosworth in Connecticut—that Bosworth would obtain the $10 million financing shortly. Id. at ¶ 13. Many times over these 16 months, Bosworth was traveling for Back9 and was not always in Connecticut when Altounian sent these emails. Altounian Aff. ¶ 4. At a

meeting of Back9's Board of Directors on Friday, July 1, 2011, in Pebble Beach, California, Altounian made an in-person presentation in which he expressly promised that he would provide the $10 million in financing immediately, with a term sheet to be circulated by Wednesday, July 6, 2011.  Compl. ¶ 21.  Altounian never provided the $250,000 in seed money, Compl. ¶ 20, nor did he provide the $10 million in financing. Compl. ¶ 22.

Back9 demanded, through counsel, that Altounian return the 388,195 shares. Bosworth Aff. ¶ 21, Altounian refused to return the shares, id. at ¶ 21, stating that the transfer of shares was never contingent on Altounian providing financing for Back9. Mem. in Opp. Mot. to Dismiss, Ex. D, at 2.  Back9 also requested that Alliance refrain from listing Back9 as a "portfolio company" on Alliance's website.  Compl. ¶ 9; Mem. in Opp. Mot. to Dismiss, Ex. C, at 4.  When Altounian and Alliance refused to return the shares, the Back9 Board of Directors voted to cancel the shares on April 4, 2012. Compl. ¶ 26.

## III. LEGAL STANDARD

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  Met Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 566 (2d Cir.1996).  "Where a court relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant."  DiStefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001).  "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited . . . , would

suffice to establish jurisdiction over the defendants." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.2008) (internal citations and quotation marks omitted). All allegations are construed "in the light most favorable to plaintiff and doubts are resolved in the plaintiff's favor." Id.

**IV.    DISCUSSION**

"A federal court sitting in Connecticut in diversity must rely on Connecticut's long-arm statute in determining whether a sufficient basis exists for exercising personal jurisdiction over the nonresident defendants." Halo Tech. Holdings, Inc. v. Cooper, 2008 WL 877156, at * 6 (D. Conn. Mar. 26, 2008). If the court finds that jurisdiction is appropriate under the long-arm statute, it must then determine whether jurisdiction comports with due process. See Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990).

    A. Connecticut Long-Arm Statute

The court will address separately whether Back9 has met its burden of showing that the Connecticut long-arm statute applies to Altounian and Alliance.

        1.  Altounian

Back9 argues that this court has personal jurisdiction over Altounian pursuant to three provisions of Connecticut's long-arm statute. "In order to find personal jurisdiction over a nonresident defendant, only one of the provisions of [Connecticut General Statutes, section] 52-59b(a) needs to be satisfied." Vertrue, Inc. v. Meshkin, 429 F.Supp.2d 479, 489 (D. Conn. 2006). Back9 argues that this court has jurisdiction, pursuant to section 52-59b(a)(1), because Altounian transacted business within Connecticut; pursuant to section 52-59b(a)(2), because Altounian committed a tortious act within Connecticut; and pursuant to section 52-59b(a)(3), because Altounian

committed a tortious act outside Connecticut which caused injury within Connecticut and Altounian regularly did or solicited business in Connecticut or expected or reasonably expected his tortious act to have consequences in Connecticut and derives substantial revenue from interstate or international commerce. See Conn. Gen. Stat. § 52-59b(a)(1)-(3); Mem. in Opp. Mot. to Dismiss at 10. For the foregoing reasons, the court finds that Back9 has met its burden of showing this court has personal jurisdiction over Altounian under section 52-59b(a)(2); therefore the court need not consider whether jurisdiction would be appropriate pursuant to sections 52-59b(a)(1) and (a)(3).

      a. Altounian committed a tort in Connecticut

Back9 argues that this court may assert personal jurisdiction over Altounian because he committed a tort in Connecticut by transmitting fraudulent misrepresentations to Connecticut by way of telephone and email. See Mem. in Opp. Mot. to Dismiss at 14. According to Back9, Altounian "had consistent and ongoing communications with Back9's principals in Connecticut via email and phone in which he misrepresented many things to the Company." Id. at 15.

A person who sends false representations into Connecticut by wire commits a tortious act within Connecticut for purposes of the long-arm statute. See Cody v. Ward, 954 F.Supp. 43, 45 (D. Conn. 1997); see also General Star Indemn. Co. v. Anheuser-Busch Co., 199 F.3d 1322 (2d Cir. 1999) (citing approvingly Connecticut case law holding that misrepresentations sent by way of telephonic and postal communications sent to and received in Connecticut constitute actionable conduct in Connecticut) (unpublished opinion). Back9 alleges that, between 2010 and 2011, Altounian corresponded with Back9's CEO Bosworth fairly regularly by email, text messages, and

telephone. Bosworth Aff. ¶ 11. In addition, Altounian directed numerous emails and calls to Back9's President J. Reid Gorman ("Gorman") in Connecticut in 2010 and 2011. Gorman Aff. ¶ 2. During these conversations, Altounian represented to Bosworth, Gorman, and Back9 that he would provide $250,000 in seed money and, eventually, $10 million in financing. Bosworth Aff. ¶ 11; Gorman Aff. ¶ 3. In reliance on these assurances, Back9 issued stock certificates representing the shares transferred to Altounian by Meloth. Bosworth Aff. ¶ 12.

Altounian attempts to argue that emails between he and Bosworth cannot constitute torts within Connecticut because (1) the emails were not directed to Connecticut as Bosworth was often travelling out of state, and (2) the emails were not tortious, as many of them did not include any "promises," but were rather logistical emails. See Reply at 8-9. The problem with Altounian's argument is that he focuses solely on the emails attached to Bosworth's affidavit. It is true that many of the emails were sent for the purpose of scheduling conference calls and the like. In addition, some of the emails were sent at times when Bosworth was indeed travelling out of state. See Altounian Aff. ¶ 4 (setting forth Bosworth's travel schedule, including between May 1-13, 2011); Bosworth Aff. (attached email from May 11, 2011). Further, certain emails— including those discussing Back9's "deal" with Altounian to obtain financing—were sent well after Back9 issued the stock certificates to Altounian. See Bosworth Aff. (attached email from August 5, 2011); see also Mem. in Opp. Mot. to Dismiss, Ex. D, at 2 (stating that the Board of Directors voted to convey the shares to Altounian on July 1, 2010). Those fraudulent misrepresentations reflected in the email could not have caused Back9 to issue the shares to Altounian and, therefore, the cause of action could not

have arisen from that tortious conduct. See Conn. Gen. Stat. § 52-59b(a) (stating that the cause of action must arise from the acts enumerated in the section).

However, Back9 alleges by affidavit that Altounian also spoke with Bosworth over the telephone and sent text messages to Bosworth in 2010 (as well as 2011). See Bosworth Aff. ¶ 11. Back9 alleges that: (1) Bosworth is a Connecticut resident, (2) Back9 has always been based in Connecticut, and (3) Altounian knew that Back9 and Bosworth were located in Connecticut,[1] id. at ¶¶ 2-3, 16, which suggests to this court that Altounian directed these calls and text messages to Bosworth in Connecticut. Although Altounian presented evidence that Bosworth was travelling often between late March and late May 2011, Altounian Aff. ¶ 4, he has not introduced any evidence as to Bosworth's travel schedule prior to the issuance of the stock certificates in July 2010. See Mem. in Opp. Mot. to Dismiss, Ex. D, at 2. Further, Back9 alleges that Altounian directed calls and emails to Gorman in Connecticut in 2010, and that those calls related to the financing deal between Back9 and Altounian. Gorman Aff. ¶¶ 2-3. Construing the allegations "in the light most favorable to plaintiff and [resolving] doubts . . . in the plaintiff's favor," Whitaker, 261 F.3d at 208, the court finds that Back9 has made a prima facie showing that Altounian committed a tort within Connecticut.

---

[1] Altounian and Alliance state that they "recall that most of the business Back9 conducted during . . . [the company's formation in 2010] was done largely outside of Connecticut" and that "Back9 was not substantively operating in Connecticut." Defs.' Mem. in Supp. Mot. to Dismiss at 4. However, on a Motion to Dismiss, the court must construe the plaintiff's allegations in the light most favorable to the plaintiff and resolve doubts in the plaintiff's favor. See Whitaker, 261 F.3d at 208. Back9 alleges that it was based in Connecticut and that Altounian was aware of its presence in Connecticut. See Gorman Aff. ¶ 5 ("At all times, and during all of our calls and emails, Altounian was specifically aware that Back9 was a Connecticut company, that we were headquartered and operating in Connecticut and that he had promised to provide financing to us in Connecticut, in exchange for equity in the Company."). Therefore, Back9's allegations, if credited, are "suffice to establish jurisdiction over the defendant." Id.

Further, Bosworth states in his affidavit that Back9 issued the stock certificates in reliance upon Altounian's assurances, meaning these conversations took place before Back9 issued the stock certificates. Bosworth Aff. at ¶ 12; Gorman Aff. at ¶ 3. As such, Back9 has made a prima facie showing that the cause of action arises from Altounian's tortious conduct, i.e., his false misrepresentations that he will provide $250,000 in seed money and $10 million in financing in exchange for the Back9 shares.

    2. Alliance

Connecticut's long-arm statute treats individuals and corporations differently; personal jurisdiction over foreign corporations is government by section 33-929 of the Connecticut General Statutes. See Conn. Gen. Stat. §33-929(f). Back9 argues that this court has personal jurisdiction over Alliance pursuant to section 33-929(f)(1) because the cause of action arose out of a contract that was to be performed in Connecticut, and pursuant to section 33-929(f)(4) because the cause of action arose out of tortious conduct within Connecticut. See Mem. in Opp. Mot. to Dismiss at 8-10. Because the court finds that Alliance committed a tort in Connecticut, see Conn. Gen. Stat. §33-929(f)(4), the court need not consider whether it would have personal jurisdiction over Alliance based on section 33-929(f)(1).

        a. The cause of action arises out of a tort committed in Connecticut

A court has personal jurisdiction over a foreign corporation on any cause of action arising out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance. Conn. Gen. Stat. §33-929(f)(4). "The analysis under this statute is similar to the one conducted earlier under the statute applicable to individuals." Van Law v. Proficio

8

Mortg. Ventures, LLC, 2010 U.S. Dist. LEXIS 103550, at *11 (D. Conn. Oct. 1, 2010) (citing Cody, 954 F. Supp. at 45-46; Knipple v. Viking Comm., 236 Conn. 602, 609-11 (1996)). "In both instances, communications sent into the state can constitute tortious acts within the state." Id. at * 11-12. Because Back9 alleges that Altounian is the CEO and co-chairman of Alliance, see Compl. ¶ 13, that he made numerous telephone calls and sent text messages and emails to Back9 principals promising to secure financing for Back9, see supra, p. 7, and that any promise in exchange for the shares was made on behalf of Alliance as much as Altounian because Altounian ultimately transferred many of the shares to Alliance, see Bosworth Aff. ¶ 12, the court finds that there is a sufficient showing to establish personal jurisdiction over Alliance under the corporate long-arm statute. See Van Law, 2010 U.S. Dist. LEXIS 103550, at *11 (finding that, because the complaint alleged that the individuals who sent the communications were agents or employees of the corporation, there was a sufficient basis to assert personal jurisdiction over the corporation).

    B. Due Process

Having found that that Back9 has met its burden to show that the Connecticut long-arm statute reaches both Altounian and Alliance, the court must next consider whether exercising personal jurisdiction comports with due process. To do so, the court must ask whether Altounian and Alliance meet the "minimum contacts" test and the "reasonableness" inquiry. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002).

1. Minimum contacts

"The first of these tests asks whether the defendant 'has certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id (quoting United States Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 125, 152 (2d Cir. 2001)). "Where 'the claim arises out of, or relates to, the defendant's contacts with the forum' . . . minimum contacts exist 'where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." Id.

Back9 argues that Altounian and Alliance have minimum contacts with Connecticut because they engaged in an on-going relationship with a Connecticut based corporation and directed dozens of emails and phone calls to Back9's principals who were located in Connecticut. Mem. in Opp. Mot. to Dismiss at 18. Back9 relies on HSqd, LLC v. Morinville, 2012 U.S. Dist. LEXIS 79728 (D. Conn. June 8, 2012), to support its argument. In HSqd, the defendant created a continuing obligation between himself and the plaintiff "as part of the oral partnership," between the two parties to monetize the defendant's patents. Id. at *10, 13. The parties also "communicated through email and telephone conversations . . . which Morinville initiated and received as part of the ongoing relationship." Id. at *13. The HSqd court held that the "substantial communications . . . as part of the ongoing relationship amount to sufficient minimum contacts with Connecticut to satisfy the first aspect of the due process analysis." Id. at *13.

The court finds HSqd to be on point. Back9 alleges that Altounian and Alliance entered into an agreement with Back9, whereby Altounian could keep the 388,195

10

shares transferred by Meloth in return for providing seed money and financing to Back9. As such, Altounian—and Alliance once it obtained a large portion of the shares— entered into an ongoing relationship with Back9, a Connecticut corporation.[2]  As part of that ongoing relationship, Altounian, individually and on behalf of Alliance, sent numerous telephone calls, text messages, and emails to Back9 principals in Connecticut, see supra, p. 7.  Based on the holding in HSqd, the court finds that Back9 has met its burden of establishing that the first prong of the due process analysis is met.

The defendants attempt to argue otherwise by citing to Dictaphone Corp. v. Gagnier, 2006 WL 726675 (D. Conn. Mar. 22, 2006), a case in which the district court determined that the Connecticut long-arm statute applied, but the plaintiff, nonetheless, was unable to show minimum contacts.  See Mem. in Supp. Mot. to Dismiss at 8-9.  In Dictaphone, the court concluded that Gagnier—a human resources manager based in the California office of a Connecticut corporation—did not purposefully avail herself of the privileges and benefits of Connecticut such that she could reasonably anticipate being haled into court [t]here—for the instant action." Dictaphone, 2006 WL 726675 at *3.  Gagnier communicated with the Connecticut headquarters, received her paychecks from Connecticut, and visited on several brief business trips, but "none of the alleged conduct which underlies . . . [the] suit took place in Connecticut." Id. at *4.  The suit was

---

[2] Altounian and Alliance attempt to argue that they never entered into an agreement with Back9 to provide financing in exchange for the transfer of shares.  See Mem. in Supp. Mot. to Dismiss at 3. First, at this stage of litigation, the court construes the allegations in the light most favorable to the plaintiff.  See Whitaker, 261 F.3d at 208.  It may be that Altounian and Alliance can prove that their receipt of the shares was not contingent on them providing any financing to Back9.  See Mem. in Opp. Mot. to Dismiss, Ex. D, at 2 (counsel for the defendants stating that the issuance of the shares was not contingent on any action by the defendants).  But, that fight is for another day.  Second, to the extent that the defendants argue that they obtained the shares because they agreed to serve on Back9's Advisory Board and assist "leverage[ing] the contact and relationships of such Advisory Board members," id. at 6, the court does not see how such an ongoing relationship with a Connecticut corporation would counter against a finding of minimum contacts.

11

related to Gagnier's alleged failure to report incidents of sexual harassment. The harassment took place outside Connecticut, and there does not appear to be any evidence that the communications between Gagnier and the Connecticut office were in any way related to the alleged harassment. Id. Therefore, the case is distinguishable from HSqd and from the matter before this court. Unlike Gagnier's communications, Altounian and Alliance's communications with Back9's principals in Connecticut are entirely related to the current cause of action.

2. Reasonableness

"The second part of the jurisdictional analysis asks 'whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of the particular case.'" Bank Brussels Lambert, 305 F.3d at 129. Courts are to consider five factors in determining whether jurisdiction is reasonable: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Metropolitan Life Ins., Co. v. Robertson-Ceco, Corp., 84 F.3d 560, 568 (2d Cir. 1996) (citing Asahi Metal Industry, Co. v. Superior Court of California, Solano Cnty, 480 U.S. 102, 113-14 (1987)). "Once there is a showing that the defendant has purposefully directed his activities at the forum state, the burden is on the defendant to make a compelling case showing other considerations that render jurisdiction unreasonable." HSqd, 2012 U.S. Dist. LEXIS 79728 at *15 (citing Burger King Corp. v.

12

Rudzewicz, 471 U.S. 462, 477 (1985)). Altounian and Alliance base their arguments on the first two factors governing the reasonableness analysis.

First, Altounian and Alliance argue that it is unreasonable to place the burden on them to come to court in Connecticut as they 'are located on the other side of the country." Mem. in Supp. Mot. to Dismiss at 9 (distinguishing Frazier v. McGowan, 198 Conn. 243, 253 (1986), whereby the court "reasoned that a Rhode Island hospital was located hear enough to the Connecticut border that defending a lawsuit in Connecticut imposed no undue burden"). The court does not find this argument persuasive. Altounian and Alliance secure funding for privately held companies. See Compl. ¶ 12. They interact with investors all over the country, see Bosworth Aff (Aug. 5, 2011 email referencing Chicago deal), and the emails attached to Bosworth's affidavit show that Altounian had at least intended to travel to New York for Back9. See Bosworth Aff. (August 2, 2011 email). Given their extensive contacts and ease of travel, the court does not find that defending suit in Connecticut will be overly burdensome.

Second, Altounian and Alliance also argue that it is unfair to ask them to appear in a Connecticut court when they have no relevant contacts whatsoever with the forum state. See Mem. in Supp. Mot. to Dismiss at 9. Not only does the court disagree as to the existence of relevant contacts, see supra, p. __, but, to the extent the defendants are arguing that the forum state does not have an interest in the litigation, this is simply untrue. The state has an interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," HSqd, 2012 U.S. Dist. LEXIS 79728, at *15 (citing Burger King, 471 U.S. at 473), particularly here, where the Connecticut

Department of Economic and Community Development has invested in the future viability of Back9.  See Reply, Ex. 4, at 3.

The court finds that Altounian and Alliance failed to meet their burden to show why exercising personal jurisdiction over them in Connecticut is unreasonable.

## V.     CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 9) is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut, this 13th day of March, 2013.

                                                           /s/ Janet C. Hall
                                          Janet C. Hall
                                          United States District Judge