UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BACK9 NETWORK, INC.,     Plaintiff, | ::: CIVIL ACTION NO.: 3:12-CV-00582 (JCH) |
| v. | :: |
| BRIAN ALTOUNIAN andALLIANCE ACQUISITIONS, INC.,     Defendants. | :: SEPTEMBER 27, 2013: |

**RULING RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 47)**

### I.INTRODUCTION

Plaintiff Back9 Network, Inc. ("Back9") alleges that defendants Brian Altounian ("Altounian") and Alliance Acquisitions ("Alliance") fraudulently acquired shares of Back9 stock. Back9 seeks a declaration that all such shares are void, canceled, or of no effect. Altounian and Alliance have filed a Motion for Summary Judgment (Doc. No. 47) on this claim.

### II.STANDARD OF REVIEW

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 642 F.3d 110, 116 (2d Cir.2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." Id. In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir.2013).

1

"The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.2010).  Once the moving party has satisfied that burden, to defeat the motion "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" Wright v. Goord, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed.R.Civ.P. 56(e)).  "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co., 421 F. App'x 52, 53 (2d Cir.2011); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir.2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor).  "[U]nsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000).

### III.     FACTUAL BACKGROUND

Back9 is a "multi-media golf and entertainment lifestyle network" headquartered in Hartford, Connecticut.  Def.'s Local Rule ("L.R.") 56(a)(1) Stmt. (Doc. No. 49) ¶ 1.  Altounian is a resident of California, where Alliance Acquisitions is also based.  Id. ¶ 2.  In either 2010 or 2011, Alliance Acquisitions, through its CEO Altounian, acquired 388,195 shares of stock in Back9.  Id. ¶ 9; Pl.'s L.R. 56(a)(2) Stmt. (Doc. No. 59) §1, ¶ 9.

Back9 disputes defendants' representation of how they came to possess the Back9 shares. While Altounian and Alliance claim that Thomas Meloth,[1] a "long-time friend" and business associate of Altounian, gifted the Back9 shares to Altounian, Back9 alleges that Reid Gorman, Back9's Chief Operating Officer, sent Altounian the shares on behalf of Back9, not Meloth. Def.'s L.R. 56(a)(1) Stmt. ¶ 3, 10; Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 4, §2, ¶ 2.[2] Further, Back9 insists that Meloth never owned the shares at issue and that, prior to their transfer to defendants, said shares were only owned by the company. Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 11, 15. According to Back9, defendants received the shares in exchange for $10 million of equity capital that Altounian promised to "source and/or directly invest" in the company. Id. §1, ¶ 1. In support of this, Back9 cites Altounian's appearance at a Back9 Board meeting on July 1, 2011, wherein he allegedly told the Board that he had earmarked $10 million from a deal with financers for his promised capital investment in Back9.[3] Id. §2, ¶ 5.

Also in dispute is when the transfer of shares occurred. Back9 states that Gorman sent the shares "on or about" April 20, 2011; defendants state that Meloth gave

---

[1] Meloth appears to have received the Back9 shares as a co-founder of Back9. Def.'s L.R. 56(a)(1) Stmt. ¶ 7. Back9 does not dispute defendants' claim that Meloth acquired approximately 1.2 million founders shares in the company. Id.; Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 7. Back9 also admits that Meloth received 33,000 of his total shares in exchange for an initial capital investment of $50,000 into the company. Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 8. Contrary to Meloth's claims that he was both a co-founder of Back9 and its Creative Director, however, Back9 asserts that Meloth never actually assumed the latter role. Def.'s L.R. 56(a)(1) Stmt. ¶ 7; Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 7.

[2] Back9's Complaint offers a different account of how defendants acquired the Back9 shares. The Complaint states that "[u]pon information and belief, in or around Spring 2010, Defendant Brian Altounian . . . was given 388, 195 shares of Back9 Common Stock . . . from an individual named Tom Meloth." Compl. at ¶ 2. The Complaint also argues that Meloth had no authority to transfer the Back9 shares to defendants. Id. ¶ 3. In its Rule 56(a)(2) Statement, however, Back9 "vigorously disputes" any suggestion that the language in the Complaint is an acknowledgement of Meloth's ownership of the 388,195 shares prior to their transfer to Altounian. Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 4 n.1.

[3] Defendants do not address, let alone dispute, whether Altounian was present at this meeting or made any such investment promises.

Altounian the shares in June of 2010.  Pl.'s L.R. 56(a)(2) Stmt. §2, ¶ 2; Def.'s L.R. 56(a)(1) Stmt. ¶ 9.  Back9 issued an Offering Memorandum to prospective new investors on April 28, 2011, which lists Altounian as an "Advisory Board Member"[4] in possession of 388,195 shares.  Def.'s L.R. 56(a)(1) Stmt. ¶ 12; Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 12.  However, defendants submitted a copy of a Back9 shares certificate, dated July 12, 2010, which issues 388,195 of Back9 shares to Alliance Acquisitions.  Thomas Meloth Affidavit ("Meloth Aff.") (Doc. No. 50), Ex. 6.  The shares certificate was signed by Gorman and James Bosworth, President of Back9.  Def.'s L.R. 56(a)(1) Stmt. ¶ 11; Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 11.

On September 7, 2011, Back9 sent defendants a letter demanding the return of all Back9 certificates in their possession.[5]  James Bosworth Affidavit ("Bosworth Aff.) (Doc. No. 60), Ex. H.  Back9 claims that the company's By-Laws entitled its Board of Directors to cancel defendants' shares because the shares were fraudulently acquired.  Pl.'s L.R. 56(a)(2) Stmt. §2, ¶ 8.  Atlounian's failure to provide the $10 million that Back9 alleges he promised to them, or "any other amount of equity capital," provoked the cancellation.  Id. §2, ¶¶ 7-8.

## IV. DISCUSSION

At the center of these disputes is whether an agreement, conditioning defendants' receipt of the Back9 shares on their investment of money into Back9, actually existed.  Such a question is a factual one that both parties' submissions leave

---

[4] Back9 states that Altounian never actually joined the Advisory Board, or any other Back9 board.  Pl.'s L.R. 56(a)(2) Stmt. §1, ¶ 12.

[5] The letter also demanded that Altounian remove all references to Back9 from the Alliance website.  James L. Bosworth Affidavit ("Bosworth Aff.") (Doc. No. 60), Ex. H.  Alliance had previously listed Back9 as a "portfolio company" on its website for, Back9 claims, "nearly one year."  Pl.'s L.R. 56(a)(2) Stmt. §2, ¶ 6; Brian Altounian Affidavit ("Altounian Aff.") (Doc. No. 66) ¶ 2.

unresolved.  Back9 argues that defendants received the Back9 shares as consideration for Altounian's promise to "serve as Back9's lead institutional financer; provide the company with $250,000 in seed capital by July 2010; and source or provide a multi-million dollar equity investment shortly thereafter."  Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. (Doc.  No. 58) at 3.  Defendants argue that, because Meloth gifted the Back9 shares to Altounian, defendants were not required to provide any consideration for the shares.[6]  Def.'s Mem. of Law in Supp. of Mot. for Summ. J. (Doc. No. 48) at 3-5.  Both parties have submitted affidavits that uphold their respective accounts[7] of how and why defendants were given the Back9 shares.  See Meloth Aff.; Bosworth Aff.; Reid Gorman Affidavit ("Gorman Aff.") (Doc. No. 61).

Back9 has also provided emails between Altounian, Meloth, and Back9 employees that it argues reveal the existence of an agreement between the parties.  Gorman Aff., Exs. I-N; Bosworth Aff., Exs. A-G.  Defendants observe that "none of these emails shows, or makes any mention of, a supposed 'promise'" by defendants, "or in any way links the shares Altounian received from Meloth to that contemplated investment."  Def.'s Reply Brief in Supp. of Mot. for Summ. J. (Doc. No. 65) at 2.  While these emails do not appear to establish that Altounian agreed to provide Back9 an

---

[6] As explanation for why no consideration was required for the alleged gift of shares, defendants cite a Supreme Court of Connecticut case, Wasniewski v. Quick & Reilly, Inc., 292 Conn. 28 (2009), which defines "gift" as "a transfer of property without consideration."  292 Conn. at 103.

[7] Defendants argue that at least part of Bosworth's testimony—i.e., his statement that Meloth told him that he agreed, on Back9's behalf, to transfer the shares to Altounian in exchange for an investment from Alliance—is inadmissible hearsay.  Def.'s Reply Brief in Supp. of Mot. for Summ. J. at 3-4.  This argument, however, fails to undermine the rest of Bosworth's testimony, most notably his statement that Atlounian "directly" promised him and Back9 to provide an investment in exchange for the company "honor[ing] the deal Meloth had devised pursuant to which Altounian would receive 388,195 shares of Back9 stock" and additional stock.  Bosworth Aff. ¶ 8.  Though defendants suggest that the agreement Bosworth describes may have been for the additional stock, and not for the original 388,195 shares that he gave to Altounian, the court must resolve this ambiguity to favor the non-movant.  Def.'s Reply Brief in Supp. of Mot. for Summ. J. at 4.

5

investment in exchange for the shares, they do evince the existence of some form of agreement between the parties. See, e.g., Bosworth Aff., Ex. B at 5 (Email from Brian Altounian to James Bosworth and Benjamin Di Lello stating that he's "working on wrapping up the LOI for Back Nine."); Id., Ex. E at 2 (Email from Jane Jablons, counsel to Back9, to Brian Altounian noting that "[g]iven that a $10 million investor will have an outsized influence, the manner in which you monitor and care for your investments will have great significance for the Company."). As this court is, for summary judgment purposes, "required to resolve all ambiguities and draw all permissible factual inferences in favor" of the non-movant, Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 312 (2d Cir.1997), the emails' failure to unambiguously show a specific agreement, when they are suggestive of some agreement, cannot be a basis for granting summary judgment.

For summary judgment purposes, a fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Materiality is "not a criterion for evaluating the evidentiary underpinnings of [factual] disputes." Id. The question of whether an agreement existed between the parties is the central issue of this case; it is also one that rests on conflicting testimony and other evidence from the parties. As such, it is a question of genuine material fact that this court cannot decide on summary judgment. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id. at 255.

### V. CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment is **DENIED**.

**SO ORDERED.**

Dated at New Haven, Connecticut this 27th day of September, 2013.

                                                            /s/ Janet C. Hall
Janet C. Hall
United States District Judge